UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN

BRYAN JOHNSON, an Individual,
MELODY JOHNSON, an Individual,

Plaintiffs,

-vs-                                              Case No.:  1:22-cv-1237
                                                 Hon.:

FAMILY FARE, LLC.,
A Michigan Limited Liability Company
d/b/a FAMILY FARE SUPERMARKET
SPARTAN STORES FUEL, LLC.,
A Michigan Limited Liability Company
d/b/a FAMILY FARE QUICK STOP, and
JANE ODENCAMP, an Individual,

Defendants.

| AHMAD &AKBAR LAW, PLLC | |
|---|---|
| Muneeb M. Ahmad, Esq. (P70391) | |
| Syed Hussain Akbar, Esq. (P67967) | |
| Attorneys for Plaintiffs | |
| 811 N. Main Street, Suite 106 | |
| Royal Oak, MI 48067-1825 | |
| Tel. (248) 519-2313 | |
| Fax: (248) 519-2399 | |
| Muneeb@ahmadandakbar.com | |

**PLAINTIFFS' COMPLAINT**

NOW COME Plaintiffs, BRYAN JOHNSON and MELODY JOHNSON,

Individuals, by and through undersigned counsel, Ahmad & Akbar Law, PLLC, and

for Plaintiffs' Complaint against, FAMILY FARE, LLC., a Michigan Limited Liability Company, d/b/a FAMILY FARE SUPERMARKET, and SPARTAN STORES FUEL, LLC., a Michigan Limited Liability Company, d/b/a FAMILY FARE QUICK STOP, and JANE ODENCAMP, an Individual.

## PARTIES

1. Plaintiff BRYAN JOHNSON is an Individual and is an black and/or African American male who at all times relevant herein, was, and currently is, a resident of the City of Holland, located in Ottawa County within the State of Michigan.

2. Plaintiff MELODY JOHNSON is an Individual and is a disabled white and/or Caucasian female who at all times relevant herein, was, and currently is, a resident of the City of Holland, located in Ottawa County within the State of Michigan.

3. Upon information and belief, at all times relevant herein, Defendant FAMILY FARE, LLC, was and still is a Michigan Limited Liability Company, that maintains a registered office address at 2900 West Road, Suite 500, East Lansing, Michigan 48823, whose Resident Agent is CSC-Lawyers Incorporated Service.

4. Upon information and belief, at all times relevant herein, FAMILY FARE, LLC., conducted and still conducts business under the assumed name FAMILY FARE SUPERMARKET ("*Supermarket*") located and operating at 993 Butternut Drive, Holland, Michigan 49424-1552.

5. Upon information and belief, at all times relevant herein, Defendant SPARTAN

STORES FUEL, LLC., was and still is a Michigan Limited Liability Company, that maintains a registered office address at 2900 West Road, Suite 500, East Lansing, Michigan 48823, whose Resident Agent is CSC-Lawyers Incorporated Service.

6. Upon information and belief, at all times relevant herein, SPARTAN STORES FUEL, LLC., conducted and still conducts business under an assumed name of FAMILY FARE QUICK STOP that operates a gas station and convenience store ("*Quick Stop*"), located and operating at 997 Butternut Drive, Holland, Michigan 49424-1552.

7. Upon information and belief, Defendant JANE ODENCAMP ("*Odencamp*"), white and/or Caucasian female who at all times relevant herein, was, and currently is, a resident of the City of Holland, located in Ottawa County within the State of Michigan.

## JURISDICTION AND VENUE

8. Plaintiffs hereinafter incorporate by reference the above referenced Paragraphs and allegations, as though fully set forth herein.

9. Jurisdiction is proper pursuant to 28 U.S.C. §1331, 28 U.S.C. §1332, 28 U.S.C. §1343,  42 U.S.C. §1981, 42 U.S.C. §12101 et seq.,  and federal common law.

10. This Court has personal jurisdiction over Defendants because they conduct business in the State of Michigan.

11. This action seeks permanent injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure, 28 U.S.C. §134, 42 U.S.C. §1981, 42 U.S.C. §12101 et seq, M.C.L.§ 37.1101, et seq and M.C.L. §37.2302, et seq, and pursuant to the general, legal, and equitable powers of this Honorable Court.

12. A substantial part of the unlawful acts alleged herein were committed within the jurisdiction of the United States District Court for the Western District of Michigan.

13. This action involves long standing racially motivated discriminatory practices and conduct in violation of federal and state law, including but not limited to, discrimination by association (or associative discrimination), in a place of public accommodation located in this judicial district, towards and against African Americans, other minorities, and against people with disabilities, as well as against persons related or associated with individuals belonging to these protected classes.

14. Venue is proper under 42 U.S.C. §1391(b) and 42 U.S.C. §1391(d) as to Defendants because Defendants conduct business in this judicial district, and because this judicial district is where Plaintiffs reside and where a substantial part of the events or omissions giving rise to the claims occurred.

## BACKGROUND INFORMATION AND GENERAL FACTUAL ALLEGATIONS

15. Plaintiffs hereinafter incorporate by reference the above referenced Paragraphs

and allegations, as though fully set forth herein.

16. Upon information and belief, at all times relevant herein, the factual allegations set forth herein provide relevant information and compelling evidence of Defendant Supermarket, Defendant Quick Stop (hereinafter collectively referred to as "*Family Fare Defendants*") and Defendant Odencamp's (hereinafter collectively referred to as "*Defendants*") long standing racially motivated discriminatory practices and conduct in violation of federal and state law, towards and against African Americans, other minorities, and against people with disabilities, as well as against persons related or associated with individuals belonging to these protected classes.

17. Further, and more specifically, the factual allegations set forth herein provide relevant information and compelling evidence of Defendants' discrimination in violation of federal and state law against Plaintiff Bryan Johnson and Plaintiff Melody Johnson (hereinafter collectively referred to as "Plaintiffs") and further support the relief requested herein.

18. At all times relevant herein, Plaintiffs were, and currently still are an interracial married couple.

19. At all times relevant herein, Plaintiffs resided and still continue to reside on Butternut Drive, in Holland, Michigan, approximately one mile from Family Fare Defendants' Quick Stop and Supermarket and have frequented these

establishments due to necessity and convenience.

20. Upon information and belief, at all times relevant herein, Defendant Supermarket oversaw the operation of the Supermarket and its employees, personnel, agents and representatives.

21. Upon information and belief, at all times relevant herein, for all intents and purposes, Defendant Supermarket also managed and oversaw the operations of Defendant Quick Stop and its employees, personnel, agents, and representatives.

22. Upon information and belief, at all times relevant herein, under the "Family Fare" retail banner, by and through Defendant Supermarket and Defendant Quick Stop, Family Fare Defendants provided grocery, pharmacy, and fuel services to the general public.

23. Upon information and belief, at all times relevant herein, the Family Fare Defendants employed, and currently still employ, Defendant Odencamp as an employee who served as Family Fare Defendants' Quick Stop manager, cashier and/or person otherwise in charge of the gas station and convenience store.

24. Sometime in February 2022, Plaintiff Bryan Johnson entered the Family Fare Defendants' Quick Stop gas station and convenience store to get a cup of coffee for his wife, Plaintiff Melody Johnson.

25. During his visit, Plaintiff Bryan Johnson asked Defendant Odencamp, who was working at the Quick Stop, if the coffee was freshly brewed, as it appeared to be

old and cold.

26. Despite its old and cold appearance, Defendant Odencamp, while staring at Plaintiff, dismissively and rudely responded that the coffee was freshly brewed.

27. Plaintiff not wanting to argue with Defendant Odencamp, then asked Defendant for a lid that would fit the cup of coffee he wanted to buy as the appropriate size for his cup was not to be found anywhere near the coffee area.

28. Rather than give Plaintiff a proper lid, and after some back and forth about whether the lids that were near the coffee area actually fit the cup of coffee that Plaintiff was attempting to purchase, Defendant Odencamp snapped at Plaintiff and yelled *"I'm not going to tell you again, it's that lid"* and refused to provide Plaintiff with any other lid for his coffee cup.

29. Wanting to simply pay for his coffee and just leave, Plaintiff approached the counter where Defendant Odencamp was working the cash register.

30. At that time, Defendant Odencamp again snapped at Plaintiff and said *"why are you making trouble?"*

31. Plaintiff responded that he was not making trouble, but that he was just trying to get some fresh coffee for his wife and a lid that fit the cup.

32. After taking his money for a cup of allegedly freshly brewed coffee, knowing full well that it was old and cold, and further refusing to give Plaintiff a lid for his coffee, thereby depriving him of the full and complete benefit of bargain,

purchase, and/or the contract, Defendant Odencamp glared directly at Plaintiff Bryan Johnson with a disgusting look on her face and made several discriminatory statements directed at him, including but not limited to:

    a. "*I don't like your kind in my store*" when referring to Plaintiff;

    b. Telling Plaintiff that "*your kind*" are not welcome in the store;

    c. *"I'm tired of you people",* when referring to Plaintiff;

    d. *"I'm tired of your kind coming in here and making trouble,"* when referring to Plaintiff;

    e. *"I don't like you people coming in my store because every time there is a problem*", when referring to Plaintiff.

33. Defendant Odencamp's discriminatory statements and demeanor towards Plaintiff Bryan Johnson completely shocked, disturbed, hurt, angered an outraged Plaintiff as it was Plaintiff's complete and clear understanding based on Defendant Odencamp's statements and body language that her conduct towards him was motivated by Plaintiff's black or African American race.

34. Plaintiff's complete and clear understanding of Defendant Odencamp's racially motivated discriminatory conduct was further confirmed, amplified, and made clear by the fact that:

    a. Plaintiff Bryan Johnson was the only black or African American person in the store at that time;

    b. Defendant Odencamp did not display or otherwise exhibit to any of the other patrons or customers in the store, all of whom were white or Caucasian, the same type of racially motivated discriminatory conduct

wherein she harassed and refused service to Plaintiff;

c. Defendant Odencamp did not make these types of racially motivated discriminatory statements to any of the other patrons or customers in the store, all of whom were white or Caucasian;

d. Plaintiff Bryan Johnson had been in the Family Fare Defendants' Quick Stop on at least one other prior occasion wherein Defendant Odencamp was pleasantly conversing and interacting with other white or Caucasian customers, but deliberately provided poor customer service to Plaintiff when it was his turn to pay by failing to converse with him, say hello, look him in the eyes, or otherwise acknowledge him before taking his money and throwing his change on the counter at Plaintiff.

35. After Plaintiff Bryan Johnson returned home and gave the coffee to his wife and recounted the events that had just transpired, Plaintiffs went back to the Family Fare Defendants' Quick Stop to report the incident to a manager.

36. However, after identifying herself as the manager of the Quick Stop and thereafter learning that Plaintiffs were an interracial married couple, Defendant Odencamp cussed out Plaintiffs and kicked them out of the store.

37. Immediately thereafter, Plaintiffs went into the Family Fare Defendants' Supermarket to report the incident to upper management.

38. At that time, Plaintiffs spoke to a female employee who introduced herself as the acting manager in charge, and who after hearing details of the discriminatory conduct that Plaintiffs endured, apologized to Plaintiffs, and told them she would look into the matter.

39. To this end, Plaintiffs requested to provide a written statement and provide their

contact information to the Family Fare Defendants, however the Plaintiffs were told that would not be necessary.

40. As such, based on this interaction, it appeared to Plaintiffs that their complaints may not have been taken seriously.

41. Not satisfied with the response from the female employee who introduced herself as the acting manager in charge, a few days later, Plaintiffs sought out the Family Fare Defendants' actual manager who introduced himself as "Mike" and identified himself as the manager of the Family Fare Defendants' Supermarket and Quick Stop.

42. Plaintiffs explained the issue and the events that transpired, including the discriminatory statements Defendant Odencamp made to Plaintiff Bryan Johnson and again requested to provide a written statement and provide their contact information to the Family Fare Defendants.

43. However, "Mike" the manager, also declined Plaintiffs' request and dismissively stated that he would look into the matter.

44. After the February of 2022 coffee incident, and upon information and belief, sometime in the early spring of 2022, Plaintiff Melody Johnson attempted to purchase some items at the Family Fare Defendants' Quick Stop.

45. On this occasion, Plaintiff M. Johnson, who at all times relevant, was and currently is disabled and considered handicapped, parked her vehicle in front of

or near the Family Fare Defendants' Quick Stop entrance due to an emergent situation wherein she had cut her leg and was bleeding.

46. At all times relevant, Plaintiff M. Johnson had a handicap designation that was displayed on her vehicle.

47. Upon entering Family Fare's Quick Stop, upon information and belief, Defendant Odencamp recognized Plaintiff Melody Johnson and immediately stated to Plaintiff that *"You're parked in the wrong spot."*

48. Plaintiff attempted to explain to Defendant Odencamp that Plaintiff is disabled and handicapped and was bleeding from her leg, but Defendant Odencamp refused to listen or understand and refused to service Plaintiff.

49. Upon information and belief, Defendant Odencamp used the "*parked in the wrong spot"* reasoning as an excuse not to transact business with Plaintiff.

50. Defendant Odencamp's demeanor towards Plaintiff Melody Johnson completely shocked, disturbed, hurt, angered an outraged Plaintiff as it was Plaintiff's complete and clear understanding based on her prior interaction with Defendant Odencamp that the "*parked in the wrong spot"* excuse was a pretext to discriminate against Plaintiff due to her interracial marital relationship with Plaintiff Bryan Johnson and also her handicapped disabled status.

51. Indeed, upon information and belief, other people who have shopped at the Family Fare Defendants' Quick Stop have also parked their vehicle in the same

spot as Plaintiff Melody Johnson, without any incident or refusal of service.

52. Immediately after this incident, Plaintiff M. Johnson again went to the Family Fare Defendants' Supermarket to talk to "Mike" the manager and again reported this incident, who again simply stated that he will look into the matter.

53. After this "*parked in the wrong spot*" incident, sometime in the Summer of 2022, Plaintiff Melody Johnson again attempted to stop off and purchase some items from the Family Fare Defendants' Quick Stop.

54. On this occasion, Plaintiff observed Defendant Odencamp refusing to sell a young black or African American man some cigarillo cigarettes, because Defendant claimed he was not old enough to purchase the cigarettes.

55. In response, the young black or African American man stated, *"if you would have asked me nicely for my ID, I would have given it to you."*

56. Attempting to diffuse the situation, Plaintiff Melody Johnson immediately stepped in and walked the young black or African American man out of the store to avoid any problems with Defendant Odencamp and without the young black or African American man being able to complete his transaction and purchase.

57. Upon attempting to return inside the Family Fare Defendants' Quick Stop, Defendant Odencamp told Plaintiff Melody Johnson *"you can get out too"*, and again refused to conduct any business with Plaintiff.

58. Plaintiff Melody Johnson's assumption of Defendant Odencamp's discriminatory

animus towards her due to her interracial marital relationship with Plaintiff Bryan Johnson and also her handicapped disabled status was further buttressed as a result of this interaction.

59. When Plaintiff Melody Johnson again attempted to purchase some items from the Family Fare Defendants' Quick Stop the next day, Defendant Odencamp referred to the young black or African American man from the day before as Plaintiffs' son and told Plaintiff Melody Johnson that "*I don't like you and your kind*" and again refused to conduct business with Plaintiff, kicked her out of the Quick Stop, and told Plaintiff she and her kind are not welcome back.

60. Again, based on Plaintiffs' prior interactions with Defendant, Defendant Odencamp's demeanor towards Plaintiff Melody Johnson further amplified Plaintiff's shock, hurt, anger and outrage.

61. Moreover, Defendant Odencamp's statements to Plaintiff on this occasion that "*I don't like you and your kind*", further solidified, confirmed, amplified and made crystal clear Defendant Odencamp's discriminatory animus toward Plaintiff Melody Johnson due to Plaintiffs' inter-racial marital relationship and Plaintiff Bryan Johnson and the appearance to Defendant Odencamp that the young black or African American man from the day before was Plaintiffs' son.

62. Immediately after this incident, Plaintiff Melody Johnson again went to the Family Fare Defendants' Supermarket to talk to "Mike" the manager and again

reported this incident to him.

63. Plaintiffs have complained and reported Defendant Odencamp's discriminatory conduct to the Family Fare Defendants on at least three separate occasions, to no avail.

64. Further upon information and belief, other African Americans and/or other minorities and disabled persons, as well as persons related or associated with individuals belonging to these protected classes, have also been subjected to Defendants' discriminatory practices.

65. Upon information and belief, these complaints have fallen on deaf ears as the Family Fare Defendants have failed to properly and adequately investigate, address and/or correct the discriminatory conduct that black or African Americans, other minorities, or disabled/handicapped members of the public are subjected to at the hands of the Family Fare Defendants' employees, which in effect have further endorsed Defendant Odencamp's conduct and the discrimination that Plaintiffs and others were, and continue to be forced to endure. **Ex. B** – Affidavit of Chelsey Brown.

66. In fact, Family Fare Defendants' employees, representatives and agents have also stated that Family Fare Defendants are aware of complaints of discrimination and Defendant Odencamps discriminatory conduct towards African Americans, other minorities, and against people with disabilities, as well as against persons related

or associated with individuals belonging to these protected classes, but have brushed these matters under the rug and do not take those complaints seriously.

67. As a result of the Family Fare Defendants' actions or lack thereof the Family Fare Defendants are vicariously liable for the unlawful and discriminatory conduct and actions of their employees, including but not limited to Defendant Odencamp.

<u>**COUNT I**</u>
<u>**VIOLATION OF 42 U.S.C. §1981(c)**</u>

68. Plaintiffs hereinafter incorporate by reference the above referenced Paragraphs and allegations, as though fully set forth herein.

69. 42 U.S.C. §1981 provides:

**Equal rights under the law:**

All persons in the jurisdiction of the United States shall have the same right in every state and territory to make and enforce contracts to sue, be parties, give evidence, to a full and equal benefit of all of laws and proceedings for security persons and property as of enjoyed by white citizens, and shall be subject to like punishment, pains, penalty, taxes, license and exactions of every kind, and to no other.

70. Under the Fourteenth Amendment, Plaintiffs have the guaranteed right to make and enforce contracts.

71. 42 U.S.C. §1981 prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors.[1]

---

[1] *Christian v. Walmart Stores, Inc.,* 252 F3d 862, 867-68 (6th Cir. 2001) ("the making, performance, modification, the termination of contracts, and enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

72. As further set forth above in more detail, Plaintiff Bryan Johnson was subjected to intentional discrimination because his race is black and/or African American.

73. As further set forth above in more detail, Defendants discriminated against Plaintiff Bryan Johnson in violation of 42 U.S.C. §1981 and deprived him of his civil rights to make and enforce contracts by, among other things:

   a. Subjecting Plaintiff because of his race, to discrimination in denying him the full and complete benefit of bargain, purchase, and/or the contract, by taking his money for a cup of allegedly freshly brewed coffee, knowing full well that it was old and cold, and further refusing to give him a lid for his coffee;

   b. Subjecting Plaintiff because of his race, to discrimination in denying him access to the Family Fare Defendants' Quick Stop and the making of a contract to receive goods and services provided by Defendants.

   c. Subjecting Plaintiff because of his race, to embarrassment, humiliation, verbal and nonverbal harassment on the Family Fare Defendants Quick Stop premises by subjecting him several discriminatory statements, including but not limited to: "*I don't like your kind in my store*", "*I'm tired of you people*", "*I'm tired of your kind coming in here and making trouble*", "*I don't like you people coming in my store because every time there is a problem*", and telling Plaintiff that "*your kind*" are not welcome in the store, which had the purpose and/or effect of denying Plaintiff full and equal access to the making of a contractual relationship between Plaintiff and Defendants to obtain their good and/or services.

   d. Subjecting Plaintiff to severe emotional distress and anguish by not allowing Plaintiff to fully enjoy the benefit of his bargain and depriving Plaintiff of Defendants' goods and/or services.

74. As further set forth above in more detail, Plaintiff Melody Johnson was subjected to intentional discrimination because of her association and inter-racial marital relationship with Plaintiff Bryan Johnson, and the appearance that a young black

or African American man may have been Plaintiffs' son.

75. As further set forth above in more detail, Defendant Odencamp discriminated against Plaintiff Melody Johnson in violation of 42 U.S.C. §1981 and deprived her of her civil rights to make and enforce contracts by, among other things:

a. Subjecting Plaintiff to discrimination in denying her access to the Family Fare Defendants' Quick Stop and in the making of a contract to receive goods and services provided by Defendants, because of her association with Plaintiff Bryan Johnson who is black and/or African American, and because of associative race discrimination based on Defendants' assumption that a young black or African American man may have been Plaintiffs' son;

b. Subjecting Plaintiff to embarrassment, humiliation, verbal and nonverbal harassment on the Family Fare Defendants' Quick Stop premises by telling Plaintiff that "*I don't like you and your kind*", which had the purpose and/or effect of denying Plaintiff full and equal access to the making of a contractual relationship between Plaintiff and Defendants to obtain their good and/or services, because of her association with Plaintiff Bryan Johnson who is black and/or African American, and because of associative race discrimination based on Defendants' assumption that a young black or African American man may have been Plaintiffs' son; and

c. Subjecting Plaintiff to severe emotional distress and anguish by not allowing Plaintiff to fully enjoy the benefit of his bargain and depriving Plaintiff of their goods and/or services, because of her association with Plaintiff Bryan Johnson who is black and/or African American, and because of associative race discrimination based on Defendants' assumption that a young black or African American man may have been Plaintiffs' son.

76. As a direct and proximate result of Defendants' violation of 42 U.S.C. §1981, Plaintiffs suffered damages and have suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

**WHEREFORE**, Plaintiffs respectfully request this Honorable Court to enter a judgment against Defendants in the amount consistent with the damages sustained, declaratory and injunctive relief, plus costs and attorneys' fees wrongfully incurred to bring this action, in addition to any other damages, including punitive damages as provided by the applicable law.

## COUNT II
## VIOLATION OF THE ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. §37.2302 DISCRIMINATION BASED ON RACE

77. Plaintiffs hereinafter incorporate by reference the above referenced Paragraphs and allegations, as though fully set forth herein.

78. Plaintiff Bryan Johnson is a protected individual because of his race: black and/or African American.

79. Plaintiff Melody Johnson is a protected individual because of her association with Plaintiff Bryan Johnson who is black and/or African American, and because of associative race discrimination based on Defendants' assumption that a young black or African American man may have been Plaintiffs' son.

80. The Family Fare Defendants' Supermarket and Quick Stop are places of public accommodation under M.C.L. §37.2301.

81. Defendants discriminated against Plaintiff Bryan Johnson in violation of M.C.L. §37.2301 and M.C.L. §37.2302 and deprived him of his civil rights to the full and equal enjoyment of the goods, services, facilities, privileges, advantages or

accommodations of a place of public accommodation because of his race as more fully set forth and described above.

82. Defendants discriminated against Plaintiff Melody Johnson in violation of M.C.L. §37.2301 and M.C.L. §37.2302 and deprived her of her civil rights to the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of a place of public accommodation because of her association with Plaintiff Bryan Johnson who is black and/or African American, and because of associative race discrimination based on Defendants' assumption that a young black or African American man may have been Plaintiffs' son, as more fully set forth and described above.

83. Plaintiff Bryan Johnson's individual patronage and/or presence at the Family Fare Defendants' Quick Stop was objectionable, unwelcomed, unacceptable, or undesirable to Defendants because of his race, as more fully set forth and described above.

84. Plaintiff Melody Johnson's individual patronage and/or presence at the Family Fare Defendants' Quick Stop was objectionable, unwelcomed, unacceptable, or undesirable to Defendants because of her association with Plaintiff Bryan Johnson who is black and/or African American, and because of associative race discrimination based on Defendants' assumption that a young black or African American man may have been Plaintiffs' son, as more fully set forth and

described above.

85. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiffs have sustained damages, and have suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter a judgment against Defendants in the amount consistent with the damages sustained, declaratory and injunctive relief, plus costs and attorneys' fees wrongfully incurred to bring this action, in addition to any other damages, including punitive damages as provided by the applicable law.

## COUNT III
## VIOLATION OF THE AMERICAN WITH DISABILITIES ACT
## 42 U.S.C. §12101, et seq.

86. Plaintiffs hereinafter incorporate by reference the above referenced Paragraphs and allegations, as though fully set forth herein.

87. Title III of the Americans with Disabilities Act, 42 U.S.C. §12101 et seq ("ADA") prohibits discrimination on the basis of disabilities and against individuals with disabilities in places of public accommodation. 42 U.S.C. § 12181-89.

88. Plaintiff Melody Johnson is a protected individual because of she is a person with a disability as that term is defined under the ADA, because Plaintiff has a determinable physical characteristic that substantially limits one or more life

activities and is unrelated to Plaintiff's ability to use and benefit from the goods or services provided by the Family Fare Defendants' Supermarket and Quick Stop.

89. The Family Fare Defendants' Supermarket and Quick Stop are places of public accommodation as that term is defined under the ADA.

90. Defendants discriminated against Plaintiff Melody Johnson in violation of ADA and deprived her of her civil rights to the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of a place of public accommodation because of her disability as more fully set forth and described above.

91. Plaintiff Melody Johnson's individual patronage and/or presence at the Family Fare Defendants' Quick Stop was objectionable, unwelcomed, unacceptable, or undesirable to Defendants because of her disability, as more fully set forth and described above.

92. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff Melody Johnson has sustained damages, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

**WHEREFORE**, Plaintiffs respectfully request this Honorable Court to enter a judgment against Defendants in the amount consistent with the damages sustained, declaratory and injunctive relief, plus costs and attorneys' fees wrongfully incurred

to bring this action, in addition to any other damages, including punitive damages as provided by the applicable law.

## COUNT IV
## VIOLATION OF PERSONS WITH DISABILITIES ACT
## M.C.L. 37.1101, et seq

93. Plaintiffs hereinafter incorporate by reference the above referenced Paragraphs and allegations, as though fully set forth herein.

94. Plaintiff Melody Johnson is a protected individual because of she is a person with a disability as that term is defined under the Persons with Disability Civil Rights Act, MCLA 37.1101, et seq ("PDCRA"), because Plaintiff has a determinable physical characteristic that substantially limits one or more life activities and is unrelated to Plaintiff's ability to use and benefit from the goods or services provided by the Family Fare Defendants' Supermarket and Quick Stop.

95. The Family Fare Defendants' Supermarket and Quick Stop are places of public accommodation as that term is defined under the PDCRA, MCLA 37.1301.

96. Defendants discriminated against Plaintiff Melody Johnson in violation of PDCRA and deprived her of her civil rights to the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of a place of public accommodation because of her disability as more fully set forth and described above.

97. Plaintiff Melody Johnson's individual patronage and/or presence at the Family

Fare Defendants' Quick Stop was objectionable, unwelcomed, unacceptable, or undesirable to Defendants because of her disability, as more fully set forth and described above.

98. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff Melody Johnson has sustained damages, and has suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

**WHEREFORE**, Plaintiffs respectfully request this Honorable Court to enter a judgment against Defendants in the amount consistent with the damages sustained, declaratory and injunctive relief, plus costs and attorneys' fees wrongfully incurred to bring this action, in addition to any other damages, including punitive damages as provided by the applicable law.

## COUNT V
## VIOLATION OF TITLE II OF THE CIVIL RIGHTS ACT OF 1964 (PUBLIC ACCOMMODATIONS), 42 U.S.C. §2000a

99. Plaintiffs hereinafter incorporate by reference the above referenced Paragraphs and allegations, as though fully set forth herein.

100. 42 U.S.C. §2000(a) provides:

All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination on the ground of race, color, religion, or national origin.

101. 42 U.S.C. §2000(b) provides:

(b) Each of the following establishments is a place of public accommodation

within this title if its operations affect commerce, or if discrimination or segregation by it is supported by State action:

> (2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station.

102.   Under the Civil Rights Act of 1964, Plaintiffs have the guaranteed right to "full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation."

103.   42 U.S.C. §2000(a) prohibits intentional discrimination on the basis of race, color, religion, or national origin in a place of public accommodation.

104.   The Family Fare Defendants' Quick Stop is a place of public accommodation within the meaning of 42 U.S.C. §2000(b) because it is a "gasoline station" and the indoor store is "principally engaged in selling food for consumption on the premises" and is a "facility located on the premises of any retail establishment."

105.   Defendants discriminated against Plaintiff Bryan Johnson in violation of 42 U.S.C. §2000 and deprived him of his civil rights to the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of a place of public accommodation because of his race, as more fully set forth and described above.

106.   Defendants discriminated against Plaintiff Melody Johnson in violation of 42 U.S.C. §2000 and deprived her of her civil rights to the full and equal enjoyment

of the goods, services, facilities, privileges, advantages or accommodations of a place of public accommodation because of her association with Plaintiff Bryan Johnson who is black and/or African American, and because of associative race discrimination based on Defendants' assumption that a young black or African American man may have been Plaintiffs' son, as more fully set forth and described above.

107.  As a direct and proximate result of Defendants' violation of 42 U.S.C. §2000, Plaintiffs suffered damages and have suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

**WHEREFORE,** Plaintiffs respectfully request this Honorable Court to enter judgment against Defendants in the amount consistent with the damages sustained, declaratory and injunctive relief, plus costs and attorneys' fees wrongfully incurred to bring this action in addition to any other damages including punitive damages as provided by this applicable law.

<u>**COUNT VI**</u>
<u>**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**</u>

108.  Plaintiffs hereinafter incorporate by reference the above referenced Paragraphs and allegations, as though fully set forth herein.

109.  Defendants' conduct as alleged above was extreme, outrageous, and utterly intolerable in a civilized society.

110.  Defendants' actions were intentional, with reckless indifference to Plaintiffs'

rights and sensibilities.

111.   As a result of Defendants' conduct described above, Plaintiffs suffered, among other things, severe and serious emotional distress.

112.   Further, as a direct and proximate result of Defendants' intentional infliction of emotional distress, Plaintiff suffered injury and damage, including the following:

a.  pain, suffering, and emotional distress;

b.  injuries to their reputation;

c.  humiliation, mortification, and embarrassment; and

d.  other injuries or damages that are found to be related to the occurrence that appear or manifest themselves during the course of discovery and trial.

113.   As a direct and proximate result of Defendants' intentional and outrageous acts, Plaintiffs have sustained damages, and have suffered mental anguish, physical and emotional distress, humiliation, and embarrassment.

**WHEREFORE,** Plaintiffs respectfully ask this Honorable Court to enter a judgment against Defendants in the amount consistent with the damages sustained, declaratory and injunctive relief, plus costs and attorneys' fees wrongfully incurred to bring this action, in addition to any other damages, including punitive damages as provided by the applicable law.

## COUNT VII
## PERMANENT INJUNCTION

114.  Plaintiffs hereinafter incorporate by reference the above referenced Paragraphs and allegations, as though fully set forth herein.

115.  Defendants' actions were intentional, with reckless indifference to Plaintiffs' rights and sensibilities.

116.  Defendants' conduct as alleged above was extreme, outrageous, and utterly intolerable in a civilized society.

117.  Plaintiffs were denied access to Defendants' goods and services.

118.  Upon information and belief, Plaintiffs and other African Americans, other minorities, and against people with disabilities, as well as against persons related or associated with individuals belonging to these protected classes, will continue to be denied access to Defendants' goods and services.

119.  Defendants' policy of denying access to Defendants' goods and services to Plaintiffs and other African Americans, other minorities, and against people with disabilities, as well as against persons related or associated with individuals belonging to these protected classes, caused and continues to cause Plaintiffs harm.

120.  Plaintiffs are entitled to issuance of an injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, 28 U.S.C. §134, 42 U.S.C. §1981, 42 U.S.C. §12101 et seq, M.C.L.§ 37.1101, et seq and M.C.L. §37.2302, et seq, and

pursuant to the general, legal, and equitable powers of this Honorable Court enjoining Defendants from denying Plaintiffs and other African Americans, other minorities, and against people with disabilities, as well as against persons related or associated with individuals belonging to these protected classes, access to Defendants' goods and services based on their race, disability, or association with individuals belonging to these protected classes.

121.   In the absence of injunctive relief, Plaintiffs and other individuals similarly situated or African Americans and/or other minorities, as well as persons related or associated with individuals belonging to these protected classes, will continue to suffer irreparable harm at the hands of Defendants.

122.   The issuance of an injunction is not likely to cause substantial harm to others because Defendants are capable of providing Plaintiffs and other individuals similarly situated or other African Americans, other minorities, or people with disabilities, as well as persons related or associated with individuals belonging to these protected classes, Defendants' goods and/or services.

123.   Plaintiffs have a strong likelihood of success on the merits.

**WHEREFORE,** Plaintiffs respectfully request this Honorable Court to enter a judgment against Defendants in the amount consistent with the damages sustained, declaratory and injunctive relief, plus costs and attorneys' fees wrongfully incurred to bring this action, in addition to any other damages, including punitive damages as

provided by the applicable law.

## COUNT VIII
## DECLARATORY RELIEF

124.  Plaintiffs hereinafter incorporate by reference the above referenced Paragraphs and allegations, as though fully set forth herein.

125.  Defendants' conduct as alleged above was extreme, outrageous, and utterly intolerable in a civilized society.

126.  Defendants' actions were intentional, with reckless indifference to Plaintiffs' rights and sensibilities.

127.  Plaintiffs were denied access to Defendants' services.

128.  Defendants' policy of denying access to Defendants' goods and services to Plaintiffs and other African Americans, other minorities, and against people with disabilities, as well as against persons related or associated with individuals belonging to these protected classes, caused and continues to cause Plaintiffs irreparable harm.

129.  Upon information and belief, Plaintiffs and other African Americans, other minorities, and against people with disabilities, as well as against persons related or associated with individuals belonging to these protected classes, will continue to be denied access to Defendants' goods and services.

130.  Plaintiffs have a strong likelihood of success on the merits.

131.  Plaintiffs are entitled to declaratory relief pursuant to Rule 57 and 65 of the

Federal Rules of Civil Procedure, 28 U.S.C. §134, 42 U.S.C. §1981, 42 U.S.C. §12101 et seq, M.C.L.§ 37.1101, et seq and M.C.L. §37.2302, et seq, and pursuant to the general, legal, and equitable powers of this Honorable Court that Defendants unlawfully denied Plaintiffs and other African Americans, other minorities, and against people with disabilities, as well as against persons related or associated with individuals belonging to these protected classes, access to Defendants' goods and services based on their race, disability, or association with individuals belonging to these protected classes.

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court to enter a judgment against Defendants in the amount consistent with the damages sustained, declaratory and injunctive relief, plus costs and attorneys' fees wrongfully incurred to bring this action, in addition to any other damages, including punitive damages as provided by the applicable law.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court grant the following relief:

1. Legal relief:
   a. compensatory damages in whatever amount they are found to be entitled;

   b. punitive and exemplary damages commensurate with the wrong and Defendants' ability to pay; and

   c. an award of interest, costs, and reasonable attorneys' fees.

2. Equitable relief:

    a. an injunction prohibiting Defendants from denying Plaintiffs and other African Americans, other minorities, and against people with disabilities, as well as against persons related or associated with individuals belonging to these protected classes, access to Defendants' goods and services based on their race, disability, or association with individuals belonging to these protected classes, or for any other discriminatory purpose;

    b. a declaration that Defendants unlawfully denied Plaintiffs and other African Americans, other minorities, and against people with disabilities, as well as against persons related or associated with individuals belonging to these protected classes, access to Defendants' goods and services based on their race, disability, or association with individuals belonging to these protected classes;

    c. an award of interest, costs, and reasonable attorneys' fees; and

    d. other equitable relief that appears appropriate at the time of trial.

Respectfully Submitted,

\_\_\_\_/s/ Muneeb M. Ahmad

**PROOF OF SERVICE**
The undersigned certifies that the foregoing instrument was served upon:

**The Court and Counsel of Record**

On <u>November 30, 2022</u> by:
☐US MAIL    ☐Fax           Hand delivery
☐ Express mail      ☐ Overnight Courier
☐Court's Electronic Filing System
☐Other FACSIMILE:
EMAIL
Signature:  <u>/s/ Muneeb M. Ahmad, Esq.</u>
<u>(P70391)</u>

AHMAD & AKBAR LAW, PLLC
Muneeb M. Ahmad (P70391)
Attorneys for Plaintiffs
811 North Main Street, Suite 301
Royal Oak, MI 48067
T. 248-519-2313
F. 248-519-2399
Muneeb@ahmadandakbar.com

UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN

---

BRYAN JOHNSON, an Individual,
MELODY JOHNSON, an Individual,

                          Plaintiffs,

-vs-                                              Case No.: 1:22-cv-1237
                                                  Hon.:

FAMILY FARE, LLC.,
A Michigan Limited Liability Company
d/b/a FAMILY FARE SUPERMARKET
SPARTAN STORES FUEL, LLC.,
A Michigan Limited Liability Company
d/b/a FAMILY FARE QUICK STOP, and
JANE ODENCAMP, an Individual,

                          Defendants.

| AHMAD &AKBAR LAW, PLLC<br>Muneeb M. Ahmad, Esq. (P70391)<br>Syed Hussain Akbar, Esq. (P67967)<br>Attorneys for Plaintiffs<br>811 N. Main Street, Suite 106<br>Royal Oak, MI 48067-1825<br>Tel. (248) 519-2313<br>Fax: (248) 519-2399<br>Email:<br>Muneeb@ahmadandakbar.com | |
|---|---|

## PLAINTIFFS' JURY DEMAND

---

        NOW  COME  Plaintiffs,  BRYAN  JOHNSON  and  MELODY  JOHNSON,

Individuals, by and through  undersigned counsel, Ahmad & Akbar Law, PLLC, and

for Plaintiffs' Complaint against, FAMILY FARE, LLC., a Michigan Limited

Liability Company, d/b/a FAMILY FARE SUPERMARKET, and SPARTAN

STORES FUEL, LLC., a Michigan Limited Liability Company, d/b/a FAMILY

FARE QUICK STOP, and JANE ODENCAMP, an Individual hereby demand a Trial

by Jury of the above-referenced cause of action.

Respectfully Submitted,

    /s/ Muneeb M. Ahmad

**PROOF OF SERVICE**
The undersigned certifies that the
foregoing instrument was served upon:

**The Court and
Counsel of Record**

On <u>November 30, 2022</u> by:
□US MAIL   □Fax         Hand delivery
□ Express mail     □ Overnight Courier
□Court's Electronic Filing System
□Other FACSIMILE:
EMAIL
Signature:  <u>/s/ Muneeb M. Ahmad, Esq.</u>
<u>(P70391)</u>

AHMAD & AKBAR LAW,
PLLC
Muneeb M. Ahmad (P70391)
Attorneys for Plaintiffs
811 North Main Street, Suite 301
Royal Oak, MI 48067
T. 248-519-2313
F. 248-519-2399
Muneeb@ahmadandakbar.com